# ˉCHAMBERLAIN *v.* EDMONDS.

PLEADING AND PRACTICE; PARTIES; CERTIORARI; JUSTICES OF THE PEACE;
JURY TRIALS.

1. The justice of the peace is properly the sole respondent, and alone is competent to make a return, to a writ of *certiorari* issued to compel him to bring up to the Supreme Court of this District his record in a cause in which the petitioner for the writ claims he has acted or is acting without jurisdiction, and it is improper to make a party to the cause a party respondent to the petition for the writ.

2. While affidavits may properly be incorporated into a petition for a writ of *certiorari* from a superior to an inferior tribunal, or made part thereof, and may similarly be annexed to a return, independent affidavits which constitute no part of either the petition or the return, are improper in such proceedings, and when filed will not be considered.

3. When a jury empaneled on demand of the defendant in a justice of the peace case, fail to agree, it is the duty of the justice to discharge them, and the effect of such disagreement and discharge is not to terminate the cause and oust the jurisdiction of the justice, but to remit the parties to the position they held before the jury was empaneled.

4. Failure by a justice of the peace to continue a cause to a day certain after a jury empaneled therein have disagreed and been discharged, will not operate to discontinue the cause, but either party may then at any time, upon motion and notice, call it up for trial.

5. Where, after the disagreement and discharge of a jury empaneled upon demand of the defendant in a justice of the peace case, in response to a motion by the plaintiff to assign another day for trial, the defendant objects to the jurisdiction, and, after the overruling of the objection, the justice proceeds to try the case on its merits, without the intervention of a jury, and renders judgment for the plaintiff, he acts without jurisdiction and the cause is properly removable by *certiorari* to the upper court. There being a demand for a jury standing on his docket he should summon and empanel another jury for the trial of the issue, unless such trial be waived.

No. 1069. Submitted May 7, ˈ901. Decided May 23, 1901.

HEARING on an appeal from an order of the Supreme

Court of the District of Columbia, overruling a motion to quash a writ of *certiorari* to a justice of the peace, and vacating a judgment of the justice and a writ of execution issued thereon, and remanding the cause to the justice with directions to proceed therein according to law. *Affirmed.*

The COURT in its opinion stated the case as follows:

This is an appeal from an order of the Supreme Court of the District of Columbia upon a writ of *certiorari* issued by that court to restrain and vacate certain proceedings which had been had before a justice of the peace.

The appellant, Joseph B. Chamberlain, instituted a suit for $261.30 against the appellee, Frank H. Edmonds, before Anson S. Taylor, Esquire, a justice of the peace for this District. On the day appointed for the trial the appellee appeared by attorney and filed a written demand for a trial by jury, in accordance with the provision of section 1009 of the Revised Statutes of the United States for the District of Columbia. Thereupon a jury was summoned for a subsequent day specified, and was then empanneled and sworn to try the issues between the parties. The jury failed to agree, and was discharged by the justice, whether with or without the consent of the parties to the cause does not appear. The appellant and the appellee were both present at the time of the discharge; and it is alleged in the petition, which was filed by the appellee for the writ of *certiorari*, "that no continuance of the cause was then asked by either party, nor was any announced by the court, and no date was set for a retrial of the case, and all the parties were permitted to go without day, and no regular continuance of the case was ever entered on the justice's docket." The justice, however, in his return to the writ, states that at that time there was an entry made either upon the papers or on his docket for a general continuance; that is, for a continuance without mention of any special day or time for further proceedings. The entry which appears in his return

is: " Continued for further hearing." It is conceded that no definite time was stated or set for such further hearing.

Some ineffectual negotiations ensued between the attorneys of the parties to have a day set for retrial; after which, a week after the discharge of the jury, the attorney for the plaintiff in the cause, the appellant here, filed a motion before the justice, and served notice upon the attorney for the defendant, the appellee here, for the assignment of another day for trial. Neither the defendant nor his attorney appeared in answer to this motion and notice. The justice assigned a day, of which the defendant and his attorney also had notice. On the day and at the hour specified for the trial, the attorney for the defendant appeared and filed an objection in writing to the jurisdiction of the justice, on the ground, as claimed, that jurisdiction had been lost by the failure of the justice to continue the cause properly; and also, on the ground that the cause had been discontinued by the failure of the jury to agree at the previous trial. This objection to the jurisdiction, which in the argument has been referred to as a plea, was overruled by the justice; whereupon the defendant's attorney left the court, and neither he nor his client participated in the subsequent proceedings before the justice.

The justice then proceeded to try the cause himself without a jury, and rendered judgment in favor of the plaintiff for the amount claimed, with costs. Some months afterwards a writ of execution was issued upon this judgment, which was returned " *nulla bona.*" Subsequently there was a second writ of execution issued, under which there seems to have been a levy on goods of the defendant.

Thereupon the defendant filed his petition in the Supreme Court of the District for the writ of *certiorari* to be addressed to the justice, and praying to have the judgment rendered by the justice declared to be null and void. The justice made return to the writ, and set forth his docket entries and the proceedings which had been had before him, substantially as here stated. Two days before the return of the justice there was filed in the *certiorari* proceedings an

affidavit of the attorney [Wallace] for the petitioner therein, defendant in the cause before the justice, wherein the affiant stated his version of the circumstances attending the cause before the justice. There were two returns by the justice, an original and supplemental one. On the same day with the latter there were filed in the *certiorari* proceedings an affidavit of Chamberlain and an affidavit of his attorney setting forth their version of the circumstances narrated by the attorney for the petitioner in his affidavit; and Chamberlain also answered at length and in detail the petition of Edmonds for the writ of *certiorari*. A motion was then filed on behalf of Chamberlain to quash the writ; and the cause then came for hearing on the record as thus made.

The court below overruled the motion to quash the writ, and entered an order vacating the judgment rendered by the justice of the peace and the writ of execution issued thereon, and remanding the cause to the said justice, with directions to proceed therein according to law.

From this order the present appeal has been prosecuted by and in the name of Chamberlain.

*Mr. D. W. Baker* and *Mr. W. H. Sholes* for the appellant:

1. The affidavit of Wallace was no part of the record at the time of the granting of the writ of *certiorari*, and was not, and could not, be filed as an answer to the answer of the respondent, nor could it contradict the return of the justice. *Carver* v. *O'Neal*, 11 App. D. C. 353; *Hendley* v. *Clark*, 8 App. D. C. 165; *Coughlin* v. *Blake*, 55 Iowa, 637.

2. The right of an inferior court, or the right of the justice of the peace to continue a case, is an inherent right of the court or justice without any regard to whether or not such right is given by statute, and this right has been exercised by justices of the peace in this District. See *Caswell* v. *Ward*, 2 Douglas (Mich.), 374; *Coughlin* v. *Blake*, 55 Iowa, 635; *Fiero* v. *Reynolds*, 20 Barb. 275; *Bradshaw* v. *Earnshaw*, 11 App. D. C. 495.

3. Immediately after the discharge of the jury the defendant conceived the idea that he would try to defeat the

rightful recovery by resorting to technical points of pro-- cedure. Such action has been condemned by this court. *Deposit Company* v. *Beck,* 12 App. D. C. 237.

4. For cases in which this court has considered the question of when a *certiorari* will not lie, see *Hendley* v. *Clark,* 8 App. D. C. 165; *Guaranty and Loan Company* v. *Pendleton,* 14 App. D. C. 384; *Bond* v. *Hardware Company,* 15 App. D. C. 72; *Carver* v. *O'Neal,* 11 App. D. C. 353.

*Mr. Victor H. Wallace* for the appellee:

1. The civil jurisdiction of a justice of the peace being entirely statutory, authority for all his acts must be found within the limits of the statute, or else it does not exist. In this case the jury disagreed. There is no statutory authority for another trial of the case, without the institution of a new action. If there is no provision in the statute for any further proceedings, then no other proceedings can be taken, and the case is at an end. *Gulick* v. *Van Tilburgh,* 16 N. J. Law, 417; *Waddell* v. *Physic.,* 17 N. J. Law, 331. By section 1016, R. S. D. C., the only remaining duty of a justice of the peace, after the jury retires to consider their verdict, is to enter judgment on the verdict when it is rendered. If the jury disagree, of course such judgment cannot be entered. But all the justice's authority being limited to a specified act, he cannot do anything else; his powers under the writ issued in a particular case are terminated by the disagreement of the jury in such case. *Cathell* v. *Mead,* 35 Pac. Rep. 741 (Colo.); *Francis* v. *Weaver,* 25 Atl. Rep. 413 (Md.); *Felter* v. *Mulliner,* 2 Johns. 181.

2. The jurisdiction of a justice of the peace to try a case himself is ended by a demand for a jury trial. *Railway Co.* v. *O'Neal,* 10 App. D. C. 245; *Hill* v. *Neale,* 27 Wash. Law Rep. 235; *Killman* v. *Pirtle,* 28 Wash. Law Rep. 209; *Smith* v. *Chase,* 3 Cranch C. C. 348; *Adrians* v. *Johnson,* 24 Wash. Law Rep. 581; *Clayton* v. *Clark,* 55 N. J. Law, 509; *Subring* v. *Wheedon,* 8 Johns. (N. Y.) 460; Murfree, Justice Practice, Sec. 531; Ency. Pleading and Practice, Vol. 12, p. 240. This rule is also tacitly

recognized in *Hof* v. *Traction Co.,* 174 U. S. 1.    A jury trial in this case having been demanded, where did the justice find jurisdiction to try the case himself?    Not in the fact that at the first trial the jury disagreed, for, even if it be granted that such a disagreement did not of itself work a discontinuance, such disagreement did not invest the justice with jurisdiction to dispense with a jury in the further trial of the case.    *Vanderwerker* v. *The People,* 5 Wend. (N. Y.) 530; *Grovier* v. *Hall,* 23 Mich. 7.    Not in the fact that the defendant failed to make a second demand for a jury after the first had disagreed, for a demand for a jury, once properly made, is a continuing demand and need not be repeated. *Swasey* v. *Adair,* 88 Cal. 179; *Ten Eyck* v. *Farlee,* 16 N. J. 348, opinion of Ryerson, J.; Ency. Pleading and Practice, Vol. 12, p. 241, Sec. 4, par. 2.    Not in the fact that the defendant did not appear at the second trial, for, had that trial been otherwise proper, such a failure to appear would not have been a waiver of the demand for a jury trial, nor invested the justice with power to try the case himself. *Haskins* v. *Wilson,* 5 Wis. 106; Murfree, Justice Practice, Sec. 531.    We find in the statute the provision which divests the justice of jurisdiction to himself try a case upon demand of a jury trial.    Secs. 1009 and 1010, R. S. D. C.    But where is the provision which reinvests him with that jurisdiction after the case has once been submitted to a jury, unless the party demanding the jury consents to it?    The following are a few of the great number of cases, arising in courts of record, where it has been held error to refuse a party a trial by jury, which has been properly demanded and to which he is entitled by law: *Fire Dept.* v. *Harrison,* 2 Hilton (N. Y.), 458; *Andrews* v. *Pritchett,* 66 N. C. 387; *Railroad Co.* v. *Gardner,* 19 Minn. 132; *Cahoon* v. *Levy,* 5 Cal. 294; *Freeman* v. *Bridges,* 26 So. Rep. 512 (Ala.); *Condon* v. *Gore,* 42 Atl. Rep. (Md.) 900; *Scott* v. *Rowland,* 37 S. W. Rep. (Tex.) 389; *Warwick* v. *Kingman,* 51 S. W. Rep. (Ind. Ter.) 1076; *Treadway* v. *Wilden,* 12 Nev. 113; *Woods* v. *Tanquary,* 3 Col. App. 515; *Reynolds* v. *Marble,* 12 La. 424.

3. A justice of the peace loses jurisdiction of a case by permitting its parties to depart without day. If he continues a case, the continuance must be to some specified time. A mere general entry of an indefinite continuance is not sufficient. *Lynsky* v. *Pendergrast,* 2 E. D. Smith (N. Y.), 43; *Mahr* v. *Young,* 13 Wis. 710; *Crandell* v. *Bacon,* 28 Wis. 671; *Brahmstead* v. *Ward,* 44 Wis. 591; *Brosde* v. *Sanderson,* 86 Wis. 368; *Edwards* v. *Hance,* 12 N. J. Law, 125; *Woodworth* v. *Wolverton,* 24 N. J. Law, 419; *Harrison* v. *Chipp,* 25 Ill. 471; *Roberts* v. *Hathaway,* 42 Mich. 592. The special appearance of the defendant at the second trial for the purpose of objecting to the jurisdiction of the court, cannot, in any wise, be regarded as a revival of process or a waiver of errors. *Savings Co.* v. *Pendleton,* 14 App. D. C. 384; *Martin* v. *Falls,* 18 Me. 29.

Mr. Justice MORRIS delivered the opinion of the Court:

1. In the interest of good practice we deem it proper to notice with disapproval some irregularities that occur in the proceedings in the present case, all of which seem to have arisen from the erroneous frame of the petition for the writ of *certiorari.*

The caption of that petition implies that the proceeding is one between Chamberlain and Edmonds. The title is *" Frank H. Edmonds* v. *Joseph B. Chamberlain "*; and it has been very naturally assumed by Chamberlain and his attorney that Chamberlain is a party respondent to the petition, and as such entitled in his own name to appear and answer it. On the contrary, in contemplation of law, and by the very terms of the petition itself, the justice of the peace is the sole respondent to it, and the only person required or entitled to make return thereto. It is very true that the person substantially interested is not the justice of the peace, but the other party to the cause before the justice, and that upon him, and not upon the justice, is the burden oftentimes of preparing the return, and always, after the return, the burden of sustaining the propriety of the action of the jus-

tice. But the justice alone is competent to make the return to the writ, and he alone is the formal respondent to the petition; and it is by reason of the fact that he is a judicial officer, necessarily assumed to be impartial between the parties, and because the return to be made is of the proceedings before him, that the verity attributable to the return is not usually allowed to be controverted by the introduction of oral evidence. It is, therefore, irregular and not to be sanctioned, that a party interested in the cause before the justice should be made a party respondent to the petition for the writ of *certiorari* to bring up the record of the proceedings before the justice; although it may be proper enough, in an appropriate case, for the justice to include in his return to the writ, the cause of such party so far as it has been made to appear to him. There may be cases in which *certiorari* will lie, in which it would be proper to make those persons who are interested on the record parties thereto; but with us, *certiorari* from a superior to an inferior tribunal to bring up the record of the latter for the purpose of ascertaining whether it is proceeding within its jurisdiction is not a proceeding in equity, but one at common law wherein it is not proper to join as defendants or respondents those who have different interests.

2. But even if it were proper to make the appellant Chamberlain a party to the petition for the writ of *certiorari* on the ground that he was a party to the proceedings before the justice of the peace, which it is sought to review, it was not proper to inject into the cause the several affidavits which we find in the record before us. This is not a cause to be tried upon affidavits; and these affidavits serve no useful purpose whatever. Affidavits may properly be incorporated into a petition, or made part thereof; and they may similarly be annexed to a return; but independent affidavits, which constitute no part either of the petition or the return, are improper in proceedings upon a writ of *certiorari*. There is here, it is true, some justification for the affidavit of the appellant Chamberlain, inasmuch as it purports to be an answer to the petition, and he was invited by the form of the

petition; and the affidavit of the appellant's attorney is annexed to the appellant's answer as part of it; but there is no ground for the introduction of the affidavit of the appellee's attorney. We propose to disregard all these affidavits; and we have the less hesitation in so doing, since the questions involved can be disposed of without any reference whatever to them. It is sufficient for us to consider the petition and the return of the justice of the peace to the writ, in order to determine the propriety of the order which was made thereon.

3. Proceeding to the merits of the case, we may express the regret that the course of legislation in regard to the jurisdiction of justices of the peace and the tenor of judicial decision thereon, has tended to leave the whole subject in a somewhat anomalous and chaotic condition. Part of the difficulty will no doubt be removed in the near future in consequence of the adoption of the new code of law for the District of Columbia whereby it is provided, among other things, that after it goes into effect, there shall be no more trials by jury before justices of the peace. And it is believed that, in other respects, questions like some of those now before us, may be obviated in the future and greater certainty secured in the administration of the law, by the exercise of the power given to the Supreme Court of the District of Columbia, by section 996 of the Revised Statutes of the United States for this District, to "make and establish rules of practice, and prepare and publish forms of pleadings, for bringing all forms of actions, and the trial thereof, before justices of the peace."

In view of the near approach of the time when trial by jury, or what is known as such, before justices of the peace must cease, it would serve no good purpose now to attempt any elaborate inquiry into the function of such a body under the existing law. Suffice it to say that we do not find it to be either the letter or the spirit of the existing law, that, when a trial by jury is demanded before a justice of the peace, the jurisdiction of the justice then absolutely ceases, except that he is, of course, to organize the jury, record its

verdict, and enter judgment upon such verdict.  This is the theory of the appellee in the present case.  But, while it is true that, when a jury has been demanded and organized before a justice of the peace, that body supersedes the justice in the trial of the issue joined between the parties, as the statute specifically provides and requires, yet it is quite plain from the statute itself that· it was not the intention of the law to give to a jury in the court of a justice of the peace any greater power or authority than appertained to a common-law jury in a court of general jurisdiction; and it is equally clear that it was not the intention of the law wholly to oust the jurisdiction of the justice upon the empaneling of his jury, for his authority is expressly continued to receive the verdict, to enter judgment thereon, and to supervise the execution of such judgment.  In other words, the cause is pending before the justice all the time; and the jury is only an instrumentality to determine the issue of fact which is evolved in the progress of such cause, which is precisely the same purpose which the common-law jury subserves in a court of the common law.  While in the court of the justice of the peace — for we must regard it as a court, although of limited and inferior jurisdiction — there are no formal pleadings, and, therefore, no formal joinder of issue, yet the plain meaning of the provision of the statute that, *after issue joined,* a trial by jury may be demanded, is that the issue for which such trial is desired, is the same kind of issue, one merely of fact, that is tried by a common-law jury in a court of general jurisdiction.  And if this be the function of the jury, and the whole function of the jury in the one case as in the other, it necessarily follows that the court of the justice of the peace, as a court, continues in the control of the cause, and that the cause is not terminated in any event either by the agreement of the jury or by its failure to agree.  For the disagreement of the jury and its consequent discharge must be presumed to have been contemplated by the law, as well as its agreement and the rendition of a verdict.

It is no sufficient argument to say that the jurisdiction of

the justice of the peace is purely statutory, that his jurisdiction is to be limited by the strict letter of the law, and that there is to be no intendment made in favor of his jurisdiction. This is all true, but it is not to the point. The question here is not one of jurisdiction, but of procedure. Under the statute there was here undoubtedly jurisdiction both of the subject-matter and of the parties. By the general provisions of the statute the justice of the peace is fully empowered to adjudicate the whole controversy. By a special provision of the statute a jury is authorized in a certain contingency to determine a certain issue in the cause. But the jury is neither expressly, nor by implication, nor by reasonable intendment of the law, given charge of the whole cause; and we think that it would be unwarranted judicial legislation to hold that it was the effect of the statute to give it such entire control of the case. When the law says that the justice of the peace shall have full and entire jurisdiction of a cause and be empowered to determine each and every issue in it, and then provides that, in a certain contingency, a jury shall be summoned to try issues of fact, it requires no relaxation of the most rigid rules of statutory construction to hold that the general jurisdiction of the justice remains, except to the extent and for the purpose merely to which it is remitted to the jury in the contingency contemplated. To hold otherwise would be to violate the very principle of strict construction contended for by the appellee, and to invest the jury with a jurisdiction not conferred upon it by the express terms of the statute, and for which there is no good ground, either in the policy of the statute itself or outside of it.

We have said that the question here was one of procedure, not of jurisdiction. Now, every court, however inferior and limited, when acting within its jurisdiction, must be presumed to have the authority to take all reasonable and proper steps to give effect to such jurisdiction. Every court, for example, however limited, may make reasonable rules for the conduct of its business. If it is authorized to adjudicate causes, it must be presumed to have the authority to take the

testimony of witnesses to aid in such adjudication. This is not an enlargement of jurisdiction by construction, but the establishment of a procedure to give effect to the jurisdiction.

Now, we know that, in a court of general jurisdiction, the effect of the disagreement and discharge of a jury is simply to leave the issues untried and undisposed of, and to remit the parties to the position which they occupied before the jury was empanneled. The condition is as though no jury had been empanneled. Is there any good reason or any warrant of law for giving a greater effect, an effect destructive of the administration of justice, to the discharge of a jury, consequent upon disagreement, in the court of a justice of the peace? We find no such reason and no warrant of law for any such conclusion. On the contrary, if the theory of the appellee on this point were correct, it would follow that the justice of the peace had no authority to discharge the jury, and that the jury might be regarded as yet an effective body to be recalled for the completion of its duties. It would follow, in fact, that there could be no discharge at all of the jury until it had agreed upon a verdict. But no more in the court of a justice of the peace than in a court of the common law of general jurisdiction — much less, in fact — would the civilization of our age tolerate the barbarous methods whereby juries were coerced into verdicts by their being kept together indefinitely until they should agree.

We are of opinion that, under the statute, it was within the province of the justice of the peace to discharge the jury in this case, when it became reasonably certain to him that it could not be brought to an agreement; and that the effect of such disagreement and of the consequent discharge of the jury, was not to terminate the cause and oust the jurisdiction of the justice, but simply to remit the parties to the position which they held before the jury was empanneled.

4. The next contention is that, even if the disagreement and discharge of the jury did not terminate the cause, the

jurisdiction of the justice was lost by his failure to make any specific continuance of the cause to a day and time certain, which, it is claimed, operated as a discontinuance, and by the discharge of the defendant without day, which is assumed to have been the result of such discontinuance.

But what we have said with regard to the effect of the discharge of the jury is, also, to a certain extent, applicable to this proposition. By that discharge, as we have just held, the cause was left as it stood before the jury was empanneled, with an issue joined and a demand for a jury to try such issue. When the demand for a jury was filed, which was then the last step in the cause, it required no entry of a continuance to any day certain to keep the cause alive. It was not required that there should be any immediate action by the justice to comply with the demand. The cause would not have been abated, if it had been permitted to slumber indefinitely. Such would not have been the result in a court of general jurisdiction after issue joined, which of itself operates as a demand for a trial by jury. There is no entry of continuances now required in such cases, if there ever was. The condition is such that, in such case, either party may at any time, upon motion and notice, call up a cause, and put the instrumentalities in motion for its trial by a jury. Why should we apply any different rule in causes pending before a justice of the peace? And why should not the rules of procedure, dependent upon general principles of universal application, such as motion and notice, be as applicable in the court of a justice of the peace as in a court of general jurisdiction? Indeed, in the absence of specific rules specifically authorized, we would be disposed to hold that the rules of procedure of courts of general jurisdiction are applicable, so far as circumstances will permit, in the courts of justices of the peace.

Proceedings before justices of the peace are intended to be simple and as free as possible from legal technicalities. There are no formal pleadings, no terms of court, no formal continuances, no rigid rules of procedure, such as are necessary in courts of general jurisdiction. As is well known,

the purpose of the establishment of these inferior and limited tribunals is to facilitate the settlement of petty controversies, which are too small in amount or character to justify the intervention of the courts of general jurisdiction. Consequently they are authorized to proceed, not according to the rigid rules of the common law, but as the statute specifically enacts, " *according to law and the equity and right of the matter* "— words which have always been understood to require the administration of substantial justice in these tribunals without much reference to the technicalities of the law. The court of the justice of the peace is always open; it has no terms; and the law of continuances has not much application to it. It would require a very rigid application of that law to the present case to procure a discontinuance of the cause. We do not think that it applies at all.

Moreover, it is to be remarked here that the appellee, in response to the notice served upon him, appeared in court at the time set for the trial; and whether there is any question as to the propriety of calling up the cause by motion and notice or not, he was there in pursuance of the pendency of the cause. It is true that he then and there objected to the jurisdiction of the justice and his authority to proceed in the cause, and claimed that it had been discontinued. But it would have been the safer and the better course for him to have proceeded with the cause and raised the question of jurisdiction and reserved it for the appellate court.

5. After the defendant had appeared before the justice of the peace and filed his objection to the jurisdiction, and this objection had been overruled, the justice proceeded to try the cause on its merits, without the intervention of a jury, and he rendered judgment for the plaintiff. We think that in this he transcended his jurisdiction and acted without warrant of law.

There was at that time standing upon his docket a demand of the defendant for a trial by jury, which had not been gratified; for, of course, the fruitless result of the trial which was had did not satisfy the demand. Nor did the objection to the jurisdiction, which was afterwards interposed and

which counsel for appellant seem to treat as a plea *puis dar-rein continuance,* have the effect of obliterating from the record the demand for a trial by jury. Even tested by the rigid rules of pleading, which we have said should not apply to causes before justices of the peace, this plea, if plea it can be called, amounted to no more than a suggestion that the occurrences in the cause subsequent to the demand for a jury, amounted to a discontinuance; and when it was over-ruled, it left the cause precisely as though it had not been interposed. It was not a substitute for any previous plead-ing; and it did not have the effect of withdrawing any pre-vious pleading. It left standing the *issue joined* between the parties, and the demand for the trial of that issue by a jury. That demand was a continuing demand; and its dis-regard by the justice and his trial of the cause himself con-stituted an assumption of jurisdiction not warranted by law.

It is of no consequence in this connection that, upon the overruling of the defendant's objection to the jurisdiction, the defendant and his attorney left the court and did not return. *Non constat* that he might not have remained or would not have returned, if the trial by jury had been awarded to him, which he had demanded. While he might have remained and reserved the question of jurisdiction, he was not bound to be present at a trial by the justice which the justice had no warrant of law to hold; nor can his with-drawal from the court be construed as a withdrawal or abandonment of the demand for trial by jury.

6. The questions here raised appear to be somewhat novel in this jurisdiction, notwithstanding that the statute under which they arise has been on the statute book for upwards of three-quarters of a century. But this may readily be ac-counted for by the fact that trials by jury before justices of the peace were for a long time comparatively rare, and have never at any time fully commended themselves to the better sense of the community. The decisions of other jurisdic-tions, depending perhaps on different local laws or a differ-ent public policy, may not be a safe criterion for our guid-ance in our construction of our own laws; but so far as they

go, they would seem to sustain the positions here taken.  See *Vanderwerker* v. *People,* 5 Wend. 530; *Grovier* v. *Hall,* 23 Mich. 7; *Ten Eyck* v. *Farlee,* 16 N. J. 348; *Swasey* v. *Adair,* 88 Cal. 179; *Haskins* v. *Wilson,* 5 Wisc. 106. Of course, no authority is needed to support the proposition that, when a trial by jury is demanded, the justice himself is then without authority to try the issues for which the trial is demanded; for such is the letter of the law.  But it would not be correct to say that the authority is then absolutely at an end in such sense that it may not be revived and recalled into effect; for undoubtedly the voluntary withdrawal of the demand would restore it, and would reinvest the justice with the full authority which he had prior to the interposition of the demand.

It is our conclusion, (1) that the discharge of the jury in this case, consequent upon its disagreement, did not terminate the cause, or take away from the justice the power to proceed further therewith; (2) that the failure of the justice after such discharge to continue the cause, by assignment thereof to some day certain thereafter, did not effect a discontinuance thereof, or operate to discharge the defendant therefrom; but that the cause remained in court, subject to be taken up again at any reasonable time thereafter upon motion and notice; (3) that, upon such motion and notice, it was the duty of the justice, without any further or other demand therefor, to summon and empanel another jury for the trial of the issue between the parties, unless such trial was waived; and that it was not competent for him to try that issue himself without a jury.

In accordance with these conclusions we understand to have been the views of the court below; for such is the necessary inference from the order which it made and from which the present appeal has been taken.

The order appealed from, therefore, will be *affirmed, with costs; and the cause will be remanded to the Supreme Court of the District of Columbia in order to carry said order into effect.  And it is so ordered.*